WO                                                                                      MDR

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Douglas W. Derello, | No.  CV 19-05884-PHX-MTL (JFM) |
| Plaintiff, | |
| v. | **ORDER** |
| McAdorey, et al., | |
| Defendants. | |

On December 19, 2019, Plaintiff Douglas W. Derello, who is confined in the Arizona State Prison Complex-Eyman in Florence, Arizona, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983.  In a January 15, 2020 Order, the Court gave Plaintiff thirty days to either pay the filing and administrative fees or file an Application to Proceed In Forma Pauperis.

On March 3, 2020, Plaintiff paid the filing and administrative fees.  In a March 9, 2020 Order, the Court dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On March 19, 2020, Plaintiff filed his Motion to Explain Reason for Not Using Court Issued Document and a First Amended Complaint.  In his Motion, Plaintiff explained that he did not use the court-approved form because the "only legible way [for him] to communicate is through the Court Order use of a computer."  In a March 23, 2020 Order,

the Court granted the Motion to the extent Plaintiff was requesting the Court accept his First Amended Complaint despite it not being on the court-approved form.  The Court dismissed the First Amended Complaint because it did not comply with Rule 7.1(b) of the Local Rules of Civil Procedure and Rule 8 of the Federal Rules of Civil Procedure and gave Plaintiff thirty days to file a second amended complaint that cured the deficiencies identified in the Order.

On April 23, 2020, Plaintiff filed a Second Amended Complaint.  On April 30, 2020, he filed a Third Amended Complaint (Doc. 12).  In a May 6, 2020 Order, the Court noted that the Request for Relief section of Plaintiff's Third Amended Complaint was unreadable and gave Plaintiff thirty days to file a typed Request for Relief.

On May 7, 2020, Plaintiff filed a Motion to Submit Unfiled Preface Motion to Plaintiff's Third Amended Complaint (Doc. 14).  On May 14, 2020, he filed a Motion to Submit Relief (Doc. 15).  The Court will deny as moot the Motion to Submit Unfiled Preface Motion, grant the Motion to Submit Relief, order Defendant Avant-Ortiz to answer the medical care claim in Count Three of the Third Amended Complaint, and dismiss the remaining claims and Defendants without prejudice.

## I.       Plaintiff's Motions

In his Motion to Submit Unfiled Preface Motion, Plaintiff appears to be seeking permission to file a motion to submit a third amended complaint.  The Court has accepted Plaintiff's Third Amended Complaint and, therefore, will deny as moot his Motion to Submit Unfiled Preface Motion.

In his Motion to Submit Relief, Plaintiff seeks permission to file his typed Request for Relief.  The Court will grant the Motion to Submit Relief because the Court instructed Plaintiff to file the typed Request for Relief.

## II.      Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff

1   has raised claims that are legally frivolous or malicious, that fail to state a claim upon which

2   relief may be granted, or that seek monetary relief from a defendant who is immune from

3   such relief.  28 U.S.C. § 1915A(b)(1)–(2).

4          A pleading must contain a "short and plain statement of the claim *showing* that the

5   pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does

6   not demand detailed factual allegations, "it demands more than an unadorned, the-

7   defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

8   (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

9   conclusory statements, do not suffice."  *Id.*

10          "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a

11   claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*,

12   550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content

13   that allows the court to draw the reasonable inference that the defendant is liable for the

14   misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for

15   relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial

16   experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual

17   allegations may be consistent with a constitutional claim, a court must assess whether there

18   are other "more likely explanations" for a defendant's conduct.  *Id.* at 681.

19          But as the United States Court of Appeals for the Ninth Circuit has instructed, courts

20   must "continue to construe *pro se* filings liberally."  *Hebbe v. Pliler*, 627 F.3d 338, 342

21   (9th Cir. 2010).  A "complaint [filed by a pro se prisoner] 'must be held to less stringent

22   standards than formal pleadings drafted by lawyers.'"  *Id.* (quoting *Erickson v. Pardus*, 551

23   U.S. 89, 94 (2007) (per curiam)).

24   **III.   Third Amended Complaint**

25          In his four-count Third Amended Complaint, Plaintiff sues Centurion LLC, South

26   Unit Deputy Warden L. Stickley, and the following individuals at the Special Management

27   Unit-1 (SMU-1): Deputy Warden John McAdorey, Assistant Deputy Warden S. Scott,

28   Captain R. Montes, Sergeants M. Bonilla and N. Harris, Nurse Practitioner K. Avant-Ortiz,

1  and John Doe Officers.  In his Request for Relief, Plaintiff seeks monetary damages, policy

2  changes, and a prohibition against retaliation.

3       In **Count One**, Plaintiff alleges his First, Eighth, and Fourteenth Amendment rights

4  were violated.  Plaintiff contends Defendants Stickley and McAdorey purposely denied

5  him due process "with intent to deliberately cause punitive punishment."  He claims

6  Defendant Stickley, "in a retaliatory act," violated Plaintiff's constitutional rights and

7  prison policy when she denied Plaintiff notice and a hearing before transferring him from

8  a medium-custody unit to a super-maximum unit and denied him "the right to exercise his

9  1st [A]mendment right to address the wrongs."  Plaintiff asserts he had not committed any

10  infractions and the transfer had no penological purpose.  Plaintiff also contends that the

11  more he tried to pursue his First Amendment rights, the worse his punishments from

12  Defendant Stickley became.

13       Specifically, Plaintiff claims he submitted a grievance against Defendant Stickley

14  and her staff on February 28, 2019, and, on April 8, 2019, filed a grievance against Stickley

15  "for retaliation" and a "Motion for Averring Retaliation."  He contends Defendant Stickley

16  had Plaintiff moved to "Super-Max" on April 10, 2019.

17       Plaintiff claims Defendant Stickley transferred him pursuant to Department

18  Order (DO) 805, which requires notice, a hearing, and an appeals process, but Defendant

19  Stickley "deliberately thwarted that process to conceal her improprieties" and he is now

20  being housed in super-maximum custody "under integrated and punitive conditions due to

21  [Defendant] Stickley['s] actions."  Plaintiff asserts that "[t]he procedures for placing

22  inmates in the 805 process without [being] given an opportunity to have that placement

23  reviewed or the chance to speak out against it without further punishment" violate his due

24  process rights and the Eighth Amendment.

25       Plaintiff also claims that Defendant McAdorey, "through his inactions . . .

26  interfered/denied [P]laintiff's 1st [A]mendment right to pursue the wrongs against

27  [Defendant] Stickley by not enforcing policy to allow [P]laintiff to freely pursue the

28

wrongs by [Defendant] Stickley through the grievance process[ a]nd all other remedies for recourse."

In **Count Two**, Plaintiff alleges a violation of the Eighth Amendment, claiming he was subjected to a threat to his safety.

First, Plaintiff claims Defendant Bonilla "posed a threat to [Plaintiff's] safety for retaliatory reasons." Plaintiff contends Defendant Bonilla ordered an officer to place Plaintiff's cellmate on "dead-lock" for something the cellmate had allegedly done outside the cell when Plaintiff was sleeping, asked whether Plaintiff was the individual's cellmate, and then "unjustifiably" dead-locked Plaintiff for 72 hours.  Plaintiff asserts that when Defendant Bonilla came to their cell "[m]oments later" and was asked why Plaintiff had been locked down, Defendant Bonilla stated that Plaintiff "can write whoever he want[s]." Plaintiff alleges Defendant Bonilla then tried to incite a confrontation between Plaintiff and his cellmate by telling the cellmate that he did not understand how the cellmate could stay in a cell with "such a trouble[]maker" and stating that he would turn his head if the cellmate and Plaintiff got into a fight.

Plaintiff allegedly told Defendant Bonilla that Defendant Bonilla was trying to start "unnecessary problems" and that Plaintiff would not beg him to be taken off lockdown. Plaintiff claims Defendant Bonilla laughed; told Plaintiff, "aren't you tuff[,] you are locked down behind your cellie and not doing shit about it"; told Plaintiff that Plaintiff was "going to get yours one day"; and told Plaintiff that he would "tell [Defendant] Harris hello for you."

Plaintiff alleges that the following day, an officer initially told Plaintiff that he could come out of his cell, but then returned and said there was "a note in the tower stating [that Plaintiff was] to stay locked-down per [Defendant] Bonilla."  Plaintiff contends the officer "found that to be suspicious" because the information should have been in the log book, not on a note.  Plaintiff asserts that later in the day, when Plaintiff told another officer about Defendant Bonilla's actions, the officer said that Defendant Bonilla "can[']t do that."

. . . .

1   Second, Plaintiff alleges that on the first day after he was taken off lockdown,
2   Defendant John Does came into the unit because a fight had supposedly taken place.
3   Plaintiff asserts that when Defendant John Does arrived, other inmates stood up to leave,
4   but Plaintiff was sitting in his wheelchair at a table.  He contends Defendant John Does
5   yelled, "Derello stay there" and then immediately sprayed a chemical that made Plaintiff
6   extremely sick and made it hard for Plaintiff to breathe.  Plaintiff claims he "was made to
7   go back in his cell and refused medical."

8   In **Count Three**, Plaintiff alleges a violation of the Eighth Amendment regarding
9   his medical care.  He claims he has had gout since 2000.  He contends that on May 26,
10  2019, he began having severe gout pain and started submitting health needs request forms
11  for medical treatment.  He asserts that on May 31, 2019, he showed his extremely swollen
12  foot to a nurse, the nurse said she would immediately notify the nurse practitioner, and the
13  nurse later informed Plaintiff that she had notified the nurse practitioner.  Plaintiff contends
14  that on June 3, 2019, he submitted another health needs request form regarding his gout
15  pain.  He alleges he finally saw Defendant Avant-Ortiz on June 10, 2019.  Plaintiff claims
16  Defendant Avant-Ortiz gave him a shot for the pain; prescribed Indomethacin, "which has
17  been the best medicine over the years for [P]laintiff's gout"; and issued a special needs
18  order for a medical blanket for Plaintiff to use to elevate his feet for blood circulation and
19  to ease the pain and swelling.  Plaintiff alleges he did not receive the medical blanket until
20  July 11, 2019.

21  Plaintiff asserts that on July 18, 2019, Defendant Montes, who is a security captain,
22  not part of the medical department, ordered the medical blanket to be taken from Plaintiff.
23  He claims Defendant Montes had no justifiable reason to take the medical blanket other
24  than "obvious retaliation" and confiscated the blanket despite Plaintiff's objections that the
25  blanket had been medically issued to him.  Plaintiff alleges that one of the officers who had
26  been instructed by Defendant Montes to take the blanket told Plaintiff that Defendant
27  Montes claimed to have called the medical department and was told that Plaintiff had no
28  need for a medical blanket.  Plaintiff contends that as a result of Defendant Montes

confiscating the medical blanket, Plaintiff's pain increased and he was forced to seek further medical attention.

Plaintiff asserts that Defendant Avant-Ortiz was aware of Plaintiff's pain and suffering and his need for the medical blanket she had prescribed, but stopped responding to Plaintiff's health needs requests to see her.  Plaintiff claims his pain became so bad that nurses "started pushing for him to see medical."  He alleges, however, that the nurses told Plaintiff that Defendant Avant-Ortiz did not want to see him.  Plaintiff contends tele-med providers stated on three occasions in November and December 2019 that Plaintiff needed to see the on-site provider because they could not make a proper diagnosis through a screen, but Defendant Avant-Ortiz "would not even make sure that the medication pr[e]scribed by the tele-med NP[]s was delivered to Plaintiff."

Plaintiff claims Defendant Avant-Ortiz refused to see him from July 18, 2019, until March/April 2020, and refused to refill his Indomethacin prescription.  He contends Defendant Avant-Ortiz left him in pain and violated medical policies and procedures because he was litigating about the medical blanket in another lawsuit and she "sided with security about [Plaintiff's lawsuit] against them."  Plaintiff alleges Defendant Avant-Ortiz only saw him and refilled his Indomethacin prescription in March/April 2020 because she knew Plaintiff was suing her.

Plaintiff also alleges that Defendant Centurion is liable because "it did not [take] corrective action in a timely manner when its employees failed to perform their duty," "did not have an[] adequate or sufficient medication filling/re-filling system or procedures in place," and "through . . . deliberate indifference have allowed policies/procedure to go un[en]forced."  He contends this caused him unnecessary pain.

In **Count Four**, Plaintiff alleges a violation of his First and Eighth Amendment rights regarding his property.  Plaintiff asserts that after he was transferred to SMU-1, Defendant Harris intentionally destroyed at least nine boxes of Plaintiff's property, including legal documents.  Plaintiff claims that because Defendant Harris destroyed his nine boxes of property, he was denied access to the court.  He contends "documents could

not be presented by plaintiff or recovered to defend against the Summary Judg[]ment submitted by defendant Igwe" and Plaintiff "has had to request for over a year for exte[n]sions in his Rule 32 petition filing."

Plaintiff also claims he "has suffered this cruel punishment by [Defendant] Harris on several occasions" after Plaintiff began filing grievances and lawsuits against Defendant Harris and other SMU-1 staff members.  Plaintiff alleges there is no penological reason for Defendant Harris's conduct "other than retaliation," the largest amount of his property that ends up missing is legal material, and his property only ends up missing when it is in Defendant Harris's possession.

In addition, Plaintiff contends the policies and procedures for handling his legal materials were not followed when he arrived at SMU-1.  Plaintiff claims Defendant McAdorey "through his inactions allowed for [Defendant] Harris['s] violation of policy/procedure" and the destruction of Plaintiff's property.  Plaintiff asserts he notified Defendant McAdorey that Defendant Harris "had control" of Plaintiff's property and Defendant McAdorey knew Defendant Harris had previously destroyed Plaintiff's legal materials, but Defendant McAdorey "allowed" Defendant Harris to destroy Plaintiff's property.  Plaintiff contends Defendant McAdorey is the "enforcer of policies at SMU-1" and "allowed further policy and [P]laintiff's constitutional rights to be violated by not allowing [P]laintiff to exercise his 1st [A]mendment rights to speak out."  Plaintiff also claims Defendants McAdorey and Scott "violated [his] 1st [A]mendment rig[ht]s by not allowing him to process his medical/court[-]approved typewriter as was stated by ADC policy."  He asserts that as a result, his typewriter was "purposely damaged by SMU-1 staff."

**IV.    Discussion of Plaintiff's Claims**

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action.  *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).  Further, a liberal interpretation of a

1  civil rights complaint may not supply essential elements of the claim that were not initially

2  pled. *Id.*

3       An in forma pauperis complaint that merely repeats pending or previously litigated

4  claims may be considered abusive and dismissed under the authority of 28 U.S.C.

5  § 1915(e). *Cato v. United States*, 70 F.3d 1103, 1105 n.2 (9th Cir. 1995); *Bailey v. Johnson*,

6  846 F.2d 1019, 1021 (5th Cir. 1988). An in forma pauperis complaint repeating the same

7  factual allegations asserted in an earlier case, even if now filed against a new defendant, is

8  subject to dismissal as duplicative and frivolous. *See Bailey*, 846 F.2d at 1021.

9       **A.    Count One**

10      The Court will dismiss as duplicative Plaintiff's claims against Defendant Stickley

11 because he has raised substantially similar claims against Defendant Stickley in *Derello v.*

12 *Stickley*, CV 19-05363-PHX-MTL (JFM).[1]

13      Plaintiff's allegations against Defendant McAdorey are extremely vague. Plaintiff

14 does not allege what policy Defendant McAdorey failed to enforce or how it denied

15 Plaintiff's right to "pursue the wrongs." Although prisoners have a First Amendment

16 right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005),

17 "[t]here is no legitimate claim of entitlement to a grievance procedure," *Mann v. Adams*,

18 855 F.2d 639, 640 (9th Cir. 1988), and the failure to follow grievance procedures does not

19 give rise to a due process claim. *See Flournoy v. Fairman*, 897 F. Supp. 350, 354 (N.D.

20 Ill. 1995) (jail grievance procedures did not create a substantive right enforceable under

21 § 1983); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (violations of grievance

22 system procedures do not deprive inmates of constitutional rights). "[N]o constitutional

23 right was violated by the defendants' failure, if any, to process all of the grievances

24 [plaintiff] submitted for consideration." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.

25 _____

26      [1] Plaintiff alleges in his first amended complaint in CV 19-05363 that after he filed
a February 2019 grievance and an April 8, 2019 motion, "Valenzuela and officer Banghart
27 at the direction of Stickley conspired [to have Plaintiff moved to the super-maximum unit
pursuant to DO 805] in retaliation against [Plaintiff]" and he was "denied any/and all
28 meaningful notice, hearing, or afforded any means to address being treated like this." *See*
Doc. 8 at 6-7 in CV 19-05363.

1993).  In addition, "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials. Moreover, the First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy." *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003); *see also Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (failure to comply with state's grievance procedure is not actionable under § 1983 and does not compromise an inmate's right of access to the courts).  Thus, the Court will dismiss without prejudice Plaintiff's claim in Count One against Defendant McAdorey.

**B.    Count Two**

**1.    Defendant Bonilla**

To state an Eighth Amendment conditions-of-confinement claim, plaintiffs must meet a two-part test.  "First, the alleged constitutional deprivation must be, objectively, sufficiently serious" such that the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted).  Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted).  Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835.  In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Nothing in Plaintiff's allegations supports a conclusion that Plaintiff was denied the minimal civilized measure of life's necessities or suffered any harm from being held in his cell for three days.  Defendant Bonilla's alleged comments to Plaintiff's cellmate did not result in any harm to Plaintiff, and, moreover, verbal threats are insufficient to state a § 1983 claim. *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (defendants' threats of bodily harm to convince plaintiff not to pursue legal redress were insufficient to state a

claim under § 1983; "it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong"); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("'[v]erbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983'" (quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979))); *see also McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("mere threatening language and gestures . . . do not, even if true, amount to constitutional violations" (quoting *Coyle v. Hughes*, 436 F. Supp. 591, 593 (W.D. Okla. 1977))).  Thus, the Court will dismiss without prejudice Plaintiff's claim against Defendant Bonilla in Count Two.

## 2. Defendant John Does

First, Plaintiff has simply made vague and conclusory allegations against a group of officers, without any factual specificity as to what any particular individual did or failed to do.  This is insufficient.  *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of *Bivens* complaint that referred to all defendants "generally and categorically" because the plaintiff had failed to "'allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right.'" (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of either the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed.").

Second, when an inmate claims that prison officials violated his Eighth Amendment rights by using excessive physical force, the relevant inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Plaintiff appears to be alleging Defendant John Does sprayed a chemical in response to a fight, but Plaintiff provides no information regarding the fight; his involvement in the incident, if any; or why Defendant John Does sprayed the chemical.   Absent more information, Plaintiff's vague and conclusory allegations do not support a conclusion that Defendant John Does used

excessive force.  Finally, it is unclear who sent Plaintiff back to his cell and denied him medical treatment.

Thus, the Court will dismiss without prejudice Defendant John Does.

### C.     Count Three

#### 1.     Defendant Avant-Ortiz

Liberally construed, Plaintiff has stated an Eighth Amendment deliberate indifference claim against Defendant Avant-Ortiz regarding her refusal to see Plaintiff or refill his Indomethacin prescription from July 18, 2019, until March/April 2020.  The Court will require Defendant Avant-Ortiz to answer this portion of Count Three.

#### 2.     Defendant Montes

The Court will dismiss Plaintiff's claim against Defendant Montes because it is duplicative of a substantially similar claim against Defendant Montes in CV 19-05363.[2]

#### 3.     Defendant Centurion

To state a claim under § 1983 against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity.  *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138-39 (9th Cir. 2012); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (per curiam).  A plaintiff must allege the specific policy or custom and how it violated his constitutional rights.  A private entity is not liable merely because it employs persons who allegedly violated a plaintiff's constitutional rights.  *See Tsao*, 698 F.3d at 1139; *Buckner*, 116 F.3d at 452.

Plaintiff's allegations against Defendant Centurion are extremely vague and do not support a conclusion that any of the conduct described in Count Three was the result of a specific policy or custom of Defendant Centurion.  Thus, the Court will dismiss without prejudice Defendant Centurion.

---

[2] Plaintiff alleges in his first amended complaint in CV 19-05363 that Defendant Montes confiscated the medical blanket with "deliberate indifference," despite knowing Plaintiff "had a medical issue for the blanket."  *See* Doc. 8 at 9 in CV 19-5363.

### D.     Count Four

The Court will dismiss Plaintiff's claims in Count Four because they are duplicative of his claims in CV 19-5363.[3]

## V.     Warnings

### A.     Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

### B.     Copies

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendant with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4.  Plaintiff may comply with Federal Rule of Civil Procedure 5(d) by including, with every document he files, a certificate of service stating that this case is subject to General Order 14-17 and indicating the date the document was delivered to prison officials for filing with the Court.

**If** Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be required to: (a) serve Defendant, or counsel if an appearance has been entered, a copy of every document that he files, and include a certificate stating that a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court.

---

[3] Plaintiff alleges in his first amended complaint in CV 19-05363 that (1) Defendants Harris, McAdorey, Scott, and Montes denied him access to the court by taking his typewriter and allowing it to be destroyed; (2) Defendant Harris "deliberately destroyed [Plaintiff's] legal material as he had done in another on-going civil suit that [Plaintiff has] against him"; (3) Defendants Scott and McAdorey "approved a custom and tradition of losing prisoners['] property, including legal materials pertinent to prisoners['] criminal/civil cases," "allowed [Defendant] Harris to run amuck over the property room," and "created a culture . . . that tolerate[s] . . . destroying legal material, denying prisoners access to the court, [and] damaging court ordered typewriters."  *See* Doc. 8 at 9 in CV 19-05363.

1    *See* Fed. R. Civ. P. 5(a) and (d); LRCiv 5.4.  Failure to comply may result in the filing

2    being stricken without further notice to Plaintiff.

3          **C.      Possible Dismissal**

4          If Plaintiff fails to timely comply with every provision of this Order, including these

5    warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*,

6    963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure

7    to comply with any order of the Court).

8    **IT IS ORDERED:**

9          (1)     Plaintiff's Motion to Submit Unfiled Preface Motion to Plaintiff's Third

10   Amended Complaint (Doc. 14) is **denied as moot**.

11         (2)     Plaintiff's Motion to Submit Relief (Doc. 15) is **granted**.

12         (3)     Counts One, Two, and Four are **dismissed** without prejudice.

13         (4)     Defendants McAdorey, Scott, Montes, Bonilla, Stickley, Harris, Centurion,

14   and John Does are **dismissed** without prejudice.

15         (5)     Defendant Avant-Ortiz must answer the medical care claim in Count Three.

16         (6)     The Clerk of Court must send Plaintiff this Order, and a copy of the

17   Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request

18   for Waiver of Service of Summons form for Defendant Avant-Ortiz.

19         (7)     Plaintiff must complete and return the service packet to the Clerk of Court

20   within 21 days of the date of filing of this Order.  The United States Marshal will not

21   provide service of process if Plaintiff fails to comply with this Order.

22         (8)     If Plaintiff does not either obtain a waiver of service of the summons or

23   complete service of the Summons and Third Amended Complaint on Defendant within 90

24   days of the filing of the Complaint or within 60 days of the filing of this Order, whichever

25   is later, the action may be dismissed.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

26         (9)     The United States Marshal must retain the Summons, a copy of the Third

27   Amended Complaint, and a copy of this Order for future use.

28   . . . .

1    (10)    The United States Marshal must notify Defendant of the commencement of

2    this action and request waiver of service of the summons pursuant to Rule 4(d) of the

3    Federal Rules of Civil Procedure.  The notice to Defendant must include a copy of this

4    Order.

5    (11)    If Defendant Avant-Ortiz agrees to waive service of the Summons and Third

6    Amended Complaint, she must return the signed waiver forms to the United States Marshal,

7    not the Plaintiff, **within 30 days of the date of the notice and request for waiver of**

8    **service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the

9    cost of personal service.

10    (12)    The Marshal must immediately file signed waivers of service of the

11    summons.  If a waiver of service of summons is returned as undeliverable or is not returned

12    by Defendant within 30 days from the date the request for waiver was sent by the Marshal,

13    the Marshal must:

14        (a)    personally serve copies of the Summons, Third Amended Complaint,

15    and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil

16    Procedure; and

17        (b)    within 10 days after personal service is effected, file the return of

18    service for Defendant, along with evidence of the attempt to secure a waiver of

19    service of the summons and of the costs subsequently incurred in effecting service

20    upon Defendant.  The costs of service must be enumerated on the return of service

21    form (USM-285) and must include the costs incurred by the Marshal for

22    photocopying additional copies of the Summons, Third Amended Complaint, or this

23    Order and for preparing new process receipt and return forms (USM-285), if

24    required.  Costs of service will be taxed against the personally served Defendant

25    pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise

26    ordered by the Court.

27    . . . .

28    . . . .

(13)    Defendant Avant-Ortiz must answer the relevant portions of the Third Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(14)    This matter is referred to Magistrate Judge James F. Metcalf pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 29th day of May, 2020.

_Michael T. Liburdi_

Michael T. Liburdi
United States District Judge